## KUHL vs. MARTIN and others.

1. A voluntary conveyance by a debtor to his wife is void as against a creditor whose debt existed at the time.

2. Where any of the matters charged in the bill, and which are an essential part of the complainant's equity which entitled him to an injunction, remain unanswered, the injunction will not be dissolved on the hearing upon bill and answer.

3. When property in litigation in this court under a creditor's bill, is liable to depredation, and will be inevitably sacrificed if sold by a sheriff under an existing levy, it is the duty of the court to protect it; and for that purpose, a receiver will be appointed to take charge of, and sell it under the direction of the court.

4. Judgment creditors holding liens upon a debtor's property, but not made parties to a creditor's bill against their debtor, are *quasi* parties, and they may be permitted to come in, if they see fit.

On motion, in behalf of the defendant, Henry G. Cook, to dissolve injunction, on bill and answers of defendants, Cook, Smith and wife, and The Home Insurance Company, and motion in behalf of complainants for a receiver.

*Mr. Joseph Coult,* for defendant, Cook.

*Mr. G. A. Allen* and *Mr. A. V. Van Fleet,* for complainant.

THE CHANCELLOR.

The bill is filed to restrain the defendant, Henry G. Cook, who is the holder, by assignment, of two judgments recovered on the 5th of September, 1873, by The Hunterdon National Bank against Augustus B. Smith, Jacob L. Martin, and John T. Hewit, in the Supreme Court of this state, amounting, together, to $7132.93, besides interest, from selling the personal and real property of the defendants, Smith and Martin, under the executions issued thereon. The real estate consists of valuable property in Middlesex county; the personal, of certain oyster beds, and oysters planted and growing therein, in the waters of Raritan river or Raritan bay, and Arthur Kull sound, or the waters in the vicinity thereof, together with a sloop, a cat-boat, and a skiff.

The complainant holds two judgments, recovered by him against Smith, Martin and Hewit in the Supreme Court of this state, on the 23d of April, 1874, amounting, together, to $8971.48. Writs of *fieri facias de bonis et terris* have been issued on all the judgments, and levied on property of the defendants therein, or of some, or one of them. The complainant, by his bill, alleges that Cook and Smith and Martin have, by collusion, and with the intent to defraud the creditors of Smith and Martin, and to secure the property of Smith and Martin to them against the claims of their cred-

itors, mortgaged the real estate and the oyster beds and oysters to Cook for very large sums of money, which were not, and are not, due to him from them; and that he, by collusion with them, obtained the assignment of the judgments recovered by the bank, by means of the transfer to the latter, as consideration for the assignment, of a mortgage given to him for that purpose, and without consideration, by Martin and his wife, on real estate belonging to Martin, but which he had, in fraud of his creditors, caused to be conveyed, by voluntary conveyance, to his wife. The bill charges that Cook and Smith and Martin fraudulently design selling the property levied on under the judgments recovered by the bank, subject to the apparent encumbrance of large fraudulent mortgages given to Cook thereon, in all amounting to nearly $50,000, and thus to obtain, under and by means of the sale, title for the property to be held for Smith and Martin in fraud of their creditors, at a grossly inadequate price. The bill also alleges, that they intended to sell the oyster beds and oysters therein under the execution, under circumstances very favorable to them, but very unfavorable to the complainant; for the bill alleges, that the latter has no knowledge of the contents of the beds, while the former have full knowledge thereof, and so possess an advantage over him and the other creditors of Smith and Martin. The bill prays discovery and an injunction, and that a receiver may be appointed, and for other special relief, as well as general relief, based on the statements and considerations above adverted to, and on other statements and charges in the bill in reference to the property of Smith and Martin, and their disposition thereof.

It appears that, on the 31st of December, 1872, Martin and his wife mortgaged to Cook a store and warehouse in Perth Amboy, to secure the payment of $8000, with interest, and, on the same day, mortgaged to him other real estate, to secure the payment of $7000, with interest; that, on the 27th of August following, they mortgaged to him other real estate than that last mentioned, to secure the payment of $9000, with interest; that, three days afterwards, Martin, Smith,

and Hewit, with their wives, mortgaged to Cook the oyster beds, with the oysters planted and that might be planted there, and the right of planting oysters and fishing there, and also the above mentioned vessels, to secure the payment of $22,500, with interest, and on the 28th of October following, Martin and his wife mortgaged to him the same real estate on which the $7000 mortgage was given, to secure the payment of $3000, with interest. These mortgages amounted, on their face, to nearly $50,000, in the aggregate, besides interest. According to Cook's answer, he advanced in cash on the $22,500 mortgage, only $12,500, and gave his notes to Smith and Martin for the balance. He alleges in his answer that, subsequently, on his becoming dissatisfied with the security, he obtained a return of his notes and a payment of $8500 on account of that mortgage, so that it was reduced to $4000 of principal. He subsequently, and at about the time of that reduction of the mortgage, obtained two mortgages from Martin and his wife, one for $4000, and the other for $2500, which amounts were made up, he alleges, of the amount of principal and interest, $4093, due on the $22,500 mortgage, the price of a wagon which he sold to Mrs. Martin, a debt of $1170 due to him from Martin, interest due him on the mortgage of $3000 and on that of $9000, and $517 in cash then paid by him to Mrs. Martin. One object of these mortgages of $4000 and $2500 appears to have been to enable Cook to obtain, by means of them, an assignment of the judgments of the bank to him, in order, as he admits, that he might, as far as he could lawfully and safely do so, favor Martin in an effort to save his property from sale by his other creditors. These mortgages extinguished the lien of the mortgage of $22,500. The latter mortgage, however, appears not to have been cancelled, and at the filing of the bill it was a cloud, to the extent of the full amount of its face, upon the property described in it. The bill calls into question the title of Mrs. Martin to the property on which the mortgages of $4000 and $2500 were given. It was inherited by Martin from his father, and he caused it to be conveyed to his wife,

as the complainant alleges, without consideration, long after the complainant's debt was contracted. If that was indeed a voluntary conveyance, made under such circumstances, the conveyance was invalid as against the complainant. Martin died after the filing of the bill, and did not answer ; Mrs. Martin has not answered. The complainant is entitled to her answer as to the matters charged in the bill, in respect to the conveyances of property therein alleged to have been made to her, and as to the mortgages made by her and her husband to Cook. Cook, by his answer, alleges that he is not able to give the particulars of the loans to secure which the mortgages, except those for $4000 and $2500 respectively, were made, further than to mention many of the checks which, from time to time, he has given to Smith and Martin for money loaned by him to them. It is obvious that this statement is not what is called for in the premises. The complainant is entitled to a further inquiry as to the alleged loans. The mortgages held by Cook cover the property of Smith and Martin, (except the oyster beds and oysters therein,) and to such an extent as to preclude the expectation on the part of the complainant of realizing anything on his judgments, if those mortgages be established. Neither Hewit nor his wife have answered, and it is not alleged in the answers filed, that the defendants in the judgments have any property except that which is levied on under the judgments. The case is one in which the injunction should be retained until the hearing.

The complainant applies for the appointment of a receiver to take charge of and sell, under the direction of this court, the oyster beds and the oysters in them. This property is described in the inventory annexed by the sheriff to the executions on the judgments recovered by the bank, as " all that certain tract of oystering ground known as the property of the late Merrit Martin, situate, lying, and being in the tide-water of Amboy bay, in the county of Middlesex and state of New Jersey, containing one hundred acres, more or less, together with the right to take oysters therefrom, or to plant the same

thereon." The oysters planted in these beds are of great value. To sell them with the beds, without such knowledge as may be gained as to the quantity which may be reasonably expected to be found there, would be, surely, to sacrifice the property. The complainant's effort to obtain information by the discovery prayed for in his bill, has proved unavailing. Cook alleges that he has no knowledge on the subject, and Smith, who may be presumed to have knowledge of the matter, has evaded a discovery. The levy appears not to have been made upon the oysters as separate property, but upon the beds, with the right to take the oysters. The oysters may be sold, to a certain extent, at least, separate from the beds, and a large sum realized by the sale. The beds themselves are of great value.

In view of the peculiar character of the property, and the sacrifice which appears to be inevitable in case of sale by the sheriff, it is the duty of the court to take charge of and sell it. Besides, it is liable to depredation, and should be protected. It can be sold to the best advantage under the directions of this court. A receiver will therefore be appointed. There are other judgment creditors whose lien is subsequent to that of the complainant. Their interest may be protected here. They are *quasi* parties; the complainant's cause is theirs, and they may be permitted to come in, if they see fit.

The motion to dissolve is denied, and the motion for a receiver granted; both, with costs.